Enterprise Mfg. Company of Pennsylvania, Appellant, *v.* Moore.

Argued November 11, 1930. Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Julius Levi* of *Levi and Mandel,* for appellant. An endorsee for value before maturity of a negotiable promissory note is a holder in due course despite the fact that he has notice at the time of the endorsement of an executory contract between the maker and the payee, which furnished the consideration: Craig v. Sibbett & Jones, 15 Pa. 238; Detroit Savings Bank v. Towers, 42 Pa. Superior Ct. 246.

*Charles A. Wolfe,* and with him *Lawrence H. Eldredge* and *Montgomery and McCracken,* for appellee, cited: Commercial Germania Trust & Savings Bank v. Southwestern Surety Insurance Co., 145 La. 367, 82 Southern 373.

OPINION BY CUNNINGHAM, J., February 27, 1931:
Under the pleadings in this case the only issue was one of fact—whether the plaintiff, as holder of the note upon which suit was brought, had notice of an infirmity (failure of consideration) therein; that issue was decided by a jury in favor of the defendant and upon the refusal of a new trial plaintiff appealed. The assignments are based upon the refusal of the trial judge, FERGUSON, P. J., to affirm four points for charge submitted by plaintiff and the overruling, by the court in banc, of its motion for a new trial. Plaintiff's first point was for binding instructions, and, as its second, third and fourth were predicated upo elementary principles of law which, in so far as a

plicable, were correctly stated in the general charge, our inquiry may be confined to the first and fifth assignments covering the refusal of binding instructions and the denial of a new trial.

William W. Moore, defendant below and appellee here, was the owner of an apartment house in the City of Philadelphia and in the latter part of September, 1927, contracted with William M. Murphy, doing business under the trade name of Stoker Engineering Company, for the installation of three stokers in a heating plant at a price of $850. In anticipation of the prompt installation of the stokers, Moore paid Murphy $150 in cash and gave him his promissory note, dated September 24, 1927, in the sum of $700, payable ninety days after date. An essential part of the stokers consisted of castings which Murphy purchased from time to time in large quantities from appellant, The Enterprise Manufacturing Company. About thirty days after receiving the note, Murphy, being then indebted to appellant upon a running account and contemplating the purchase of additional castings, endorsed and delivered it to its credit manager, Braun. It was admitted by all the parties in interest that the stokers were never delivered by Murphy to Moore and the case, therefore, turned upon the question whether Braun had notice at the time he accepted the note from Murphy that the stokers had not been installed. Murphy testified positively that he then told him they had not been furnished; Braun denied that Murphy made any statement to that effect. There was also testimony by both Murphy and Moore that after suit had been brought they called upon Braun to protest against the injustice of attempting to collect the note from Moore when he had received no consideration for it and that Murphy then said to Braun, "You knew well enough that this installation was not installed," to which Braun replied that he

"thoroughly understood that" but explained that his company carried credit insurance and was obliged to proceed on the note in order to collect from the insurance company. This testimony was also flatly contradicted by Braun; he also stated that his company did not carry credit insurance. There was, therefore, a sharp issue of fact between the parties which was necessarily for the jury. The respective contentions were fairly submitted to that tribunal in a clear and adequate charge. They were told that the execution of the note carried with it a presumption that it was given for a consideration and although the maker would have a complete defense to a suit by the payee, if the stokers were not furnished, this appellant, as a holder for value, was entitled to recover unless the jury found from the evidence that Braun "was charged with the knowledge that there was no consideration for the note."

Attention was directed to the conflict in the evidence relative to the conversation between Murphy and Braun when the note was endorsed and delivered and the different versions thereof fully stated. The concluding paragraph of the charge reads: "If the note was taken by Braun with knowledge of the fact that Moore had received no consideration for the note and that it was for deliveries which were to be made in the future, then there ought to be a verdict for the defendant, because if Braun took the note under those circumstances, he took it with knowledge of the infirmity in the note. If, however, Murphy made no reference to future deliveries with respect to the note, but just handed the note over in payment of his running account or for the purpose of securing credit for future accounts, then there ought to be a verdict for the plaintiff for the amount of the note, with interest." It is argued in behalf of appellant that the strongest construction which should be placed upon

the testimony for appellee is that, at the time of the negotiation of the note, Braun was given notice merely that the consideration for it was an executory agreement between Moore and Murphy for the installation of stokers, but had no notice that Murphy had breached that contract. Numerous authorities are cited to the effect that notice of the existence of an executory contract between the maker and payee, without notice also that it had been broken, will not prevent one to whom the note has been negotiated from recovering as a holder in due course. The argument, however, overlooks the fact that there was testimony in this case from which a jury could reasonably find that the contract, particularly in view of the cash payment, contemplated prompt delivery and installation and that it had been breached before negotiation of the note. Moreover, it is argued in behalf of appellee, and there was evidence to sustain the contention, that Murphy had difficulty in obtaining castings from appellant in complete units and was thereby delayed in assembling the machines; that he endeavored to arrange for more satisfactory deliveries, and, as evidence of his ability to pay, submitted to Braun several notes given him by his customers, of which the note in suit was one, and that these notes were endorsed to appellant as collateral security for payment of his account; that appellant knew the notes could not be collected unless the stokers were installed and that they could not be installed unless appellant furnished proper castings; and that its failure so to do compelled Murphy to quit business. Under all the testimony the trial judge could not say that appellee had failed to carry the burden of rebutting the presumption that appellant was a holder in due course; appellant's first point was therefore properly refused.

The grounds urged for a new trial were that the verdict was capricious and the testimony that Braun said appellant carried credit insurance irrelevant to

the issue and prejudicial to appellant. The opinion of the court below answers these contentions forcefully and completely in this language: "We see no reason for granting a new trial in this case. The question was one for the jury and was submitted in a charge that plaintiff does not complain of. We cannot say the verdict was capricious and doubt if a second trial would produce a different result. One question was raised at argument which might be referred to. It is contended that a new trial should be granted because defendant testified to a conversation with plaintiff's credit manager, in which the latter referred to credit insurance. In view of the fact that this reference was a part of a conversation and was given as a reason for bringing suit, it is difficult to see how it could have been excluded. If we assume, however, that it was a matter the witness should not have referred to the obvious step was for plaintiff to move for the withdrawal of a juror. Instead of this, counsel cross-examined the witness at length on the subject, and presented no request for particular instructions dealing with that matter."

There was no abuse of discretion in refusing a new trial and we are not persuaded that any of the assignments should be sustained.

Judgment affirmed.